UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Gail Jackson,

      Plaintiff,

      v.                                    Civil Action No. 2:19-cv-232-jmc

L.L. Bean, Inc.,

      Defendant.

**OPINION AND ORDER**
(Doc. 7)

Plaintiff Gail Jackson, a Vermont resident, has sued Defendant L.L. Bean, Inc., in the District of Vermont, based on injuries she allegedly sustained while shopping at Defendant's store in Freeport, Maine. (Doc. 1.) Pending before the Court is Defendant's Motion to Transfer this action to the District of Maine. (Doc. 7.) On July 27, 2020, the Court held a hearing (via video conference) on the Motion, with counsel for both parties appearing and presenting argument. For the reasons discussed below, the Motion is DENIED.

**Background Facts and Procedure**

On December 11, 2019, Plaintiff filed her Complaint, alleging the following facts. (Doc. 1.) On or about September 26, 2018, Plaintiff and her husband visited Defendant's flagship store in Freeport, Maine. (*Id.* at 2, ¶ 9.) While Plaintiff was inspecting a table, another shopper reclined in a recliner chair that was "back-to-back" with a piece of furniture. (*Id.*, ¶ 10.) The chair knocked the piece of furniture

over and onto Plaintiff, "impacting her hip and knee and scraping down her leg." (*Id.*)  As a result of this incident, Plaintiff suffered meniscus tears to her knee, aggravation of her hip requiring hip replacement surgery, scraping and bruising on her leg, and "significant pain and discomfort."  (*Id.* ¶ 11.)  Plaintiff's medical bills from her injuries will exceed $40,000.  (*Id.*)  Moreover, Plaintiff, who is approximately 72 years of age (Doc. 18 at 1), must now walk with a cane and has had to "drastically curtail[]" her activities of daily living, including walking less than one mile at a time despite regularly walking three to five miles per day before the incident (Doc. 1 at 2, ¶ 11).

Plaintiff alleges that Defendant breached its duty to maintain its store in a safe condition by failing to take adequate measures to protect customers from being injured by the store's furniture or displays, and by failing to warn customers of dangerous conditions in the store.  (*Id.* at 2–3, ¶ 14.)  Plaintiff further alleges that Defendant knew or should have known of the unsafe condition of the placement of its furniture, which resulted in bodily injury, medical expense, pain and suffering, and mental and emotional distress to Plaintiff.  (*Id.* at 3, ¶¶ 15–17.)

Even though the subject incident occurred at Defendant's store in Maine, Plaintiff filed this action in her home state of Vermont, claiming that venue is proper here because "a substantial part of the events giving rise to Plaintiff's claim occurred in the District of Vermont." (*Id.* at 1, ¶ 5.)  In its Motion to Transfer, however, Defendant argues that the only events alleged to have occurred in Vermont are Plaintiff's receipt of Defendant's catalogs and Defendant's operation of

a separate retail store in Burlington, which events have no relation to the controversy at issue in this suit. (Doc. 7-1 at 1, 4.) Defendant accurately points out that Plaintiff does not assert that any of Defendant's alleged negligence occurred in Vermont. (*Id.* at 1.) Defendant claims that the District of Maine is "clearly" the "more convenient" forum for this case, considering that all potential witnesses except Plaintiff are located in Maine, and Maine has a strong interest in locally resolving its own controversies. (*Id.* at 5.) Defendant thus asks that the Court transfer this action to the United States District Court for the District of Maine. (*Id.* at 6.)

Plaintiff has filed an Opposition to Defendant's Motion, primarily arguing that the District of Vermont is a more convenient forum than the District of Maine because Plaintiff has received all her medical treatment here and it would be easier for her and her witnesses to participate in a trial in Vermont as opposed to in Maine. (Doc. 18.) At the hearing, Plaintiff's counsel further argued that, considering the totality of the circumstances, it is in the interest of justice for the case to remain in this district.

## Analysis

I.  **Legal Standard**

Title 28, Section 1404(a) of the United States Code provides that a district court may, in its discretion, transfer any civil action to any other district where it might have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." The purpose of this section is "to prevent the waste of time,

3

energy[,] and money[,] and to protect litigants, witnesses[,] and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). Motions to transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

The party moving to transfer bears the heavy burden of establishing that the interests of convenience and fairness will be better served by transfer to another forum. *Kiss My Face Corp. v. Bunting*, No. 02CIV2645 (RCC), 2003 WL 22244587, at *1 (S.D.N.Y. Sept. 30, 2003). "This burden is stringent, and requires the movant to make a clear showing that transfer is appropriate." *Bonerb v. Richard J. Caron Found.*, No. 93-CV-785H, 1995 WL 818657, at *1 (W.D.N.Y. July 28, 1995) (internal quotation marks omitted); *see Lapa v. Massage Envy Franchising, LLC*, No. 18 Civ. 7403 (JFK), 2019 WL 2004072, at *2 (S.D.N.Y. May 7, 2019) ("The burden rests on the moving party to make a 'clear and convincing' showing that the balance of the[] factors favors their choice of forum." (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010))).

The court considers the following factors in determining whether transfer is appropriate: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative

means of the parties.  *N.Y. Marine*, 599 F.3d at 112; *see Seltzer v. Omni Hotels*, No. 09 Civ. 9115(BSJ)(JCF), 2010 WL 3910597, at *2 (S.D.N.Y. Sept. 30, 2010).  In addition, the court considers various public-interest factors such as the "local interest in having localized controversies decided at home" and the "interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 260 (1981) (internal quotation marks omitted).

## II.   Appropriateness of Forum

### A.   Plaintiff's Choice of Forum

First, the Court gives considerable weight to Plaintiff's choice to file her Complaint in this district.  A plaintiff's choice of forum is generally entitled to "great weight," *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006), and should not be disturbed "unless the balance of . . . factors is strongly in favor of the defendant," *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998).  Where the factors are equally balanced, the plaintiff is entitled to her choice.  *Teachers Ins. and Annuity Ass'n of Am. v. Butler*, 592 F. Supp. 1097, 1106 (S.D.N.Y. 1984).  Moreover, where, as here, the plaintiff is a resident of the forum district, the plaintiff's choice is "generally accorded more deference*." Orb Factory*, 6 F. Supp. 2d at 210. (*See* Doc. 1 at 1, ¶ 1 (stating Plaintiff "is a resident of Chittenden County, Vermont").)

### B. Convenience of Witnesses

Next, the Court considers the convenience of potential witnesses. Typically, the convenience of witnesses is "the most important factor" when determining whether transfer should be granted. *Seltzer*, 2010 WL 3910597, at *2 (internal quotation marks omitted). Further, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). When weighing this factor, "the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. P'ship v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). Thus, generally, the moving party must "specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony." *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66–67 (S.D.N.Y. 1993). In many ways, the analysis of convenience to witnesses "boils down to . . . : in which forum would the trier of fact have the benefit of live testimony from more of the significant witnesses?" *Schechter v. Tauck Tours, Inc.*, 17 F. Supp. 2d 255, 261 (S.D.N.Y.1998).

The parties disagree on this factor, Plaintiff arguing that most of the witnesses are from Vermont (Doc. 18 at 3), and Defendant claiming that "[a]ll potential witnesses . . . , except Plaintiff, are located in Maine" (Doc. 7-1 at 5). Defendant explains that its employees and managers working on the date of the incident, the medical first responders, the police, and other medical treatment

providers are from Maine, and thus "may well be outside the Court's subpoena power." (*Id.*) But Plaintiff points out that she anticipates calling "six medical providers from the greater Burlington[, Vermont] area," as well as three to four of her friends and family members who live in Vermont, to testify about the impact her injuries have had on her life. (Doc. 18 at 3.) Indeed, at the hearing, Plaintiff's counsel identified seven non-party witnesses who are anticipated to testify at trial, including Plaintiff's nurse practitioner, her physical therapist, two orthopedists, two fact witnesses, and Plaintiff's husband. In contrast, defense counsel cited only one non-party fact witness, a former employee of Defendant, who would likely testify on behalf of Defendant.

      This factor favors Plaintiff over Defendant. Although there are witnesses in both states, most of Defendant's witnesses are party witnesses, i.e., employees of Defendant who were working at the store on the day of the incident. As noted above, the convenience of party witnesses is accorded less weight than the convenience of non-party witnesses, like Plaintiff's medical providers, family, and friends. Moreover, Defendant makes only a weak showing that it would be an undue hardship to produce its employees in Vermont, where Defendant also does business. *See Schmidt v. Am. Flyers Airline Corp.*, 260 F. Supp. 813, 814 (S.D.N.Y. 1966) ("We are not convinced that defendant would suffer any oppressive or unusual expense or inconvenience in transporting its own employees to New York, where it does business.").

### C.    Location of Relevant Documents and Relative Ease of Access to Sources of Proof

The parties also disagree about the location of the relevant documents and the ease of access to sources of proof.  Defendant claims all documentary evidence is located in Maine, including potential surveillance equipment and footage, the applicable store incident report, and other relevant store records.  (Doc. 7-1 at 5.)  At the hearing, defense counsel argued that this factor strongly favors Defendant because the store itself—the site of the injury—is located in Maine, not Vermont.  Counsel asserted that the store is located 20 minutes from the courthouse in Maine, whereas it is over four hours from the courthouse here in Vermont.  Given this fact, according to Defendant, a site visit by the jury would be burdensome if not impossible if the case remains in this Court.

Plaintiff, on the other hand, points out that "[t]he bulk of the relevant documents would be related to [Plaintiff's] medical records, which are all located in Vermont."  (Doc. 18 at 3.)  Moreover, Plaintiff's counsel persuasively argued at the hearing that a site visit is unlikely to be useful in this case, as it is doubtful the store will appear the same (i.e., the arrangement of furniture and other merchandise) on the date of trial as it appeared on the date of Plaintiff's injury, which occurred approximately two years ago.  Photographs or videos taken on the date of the incident will be the more relevant and useful evidence, and they can easily be produced in Vermont.

This factor favors neither party, as relevant evidence exists in both locales, given that the accident occurred in Maine but the ongoing injuries are occurring in

Vermont.  Further, the Court finds that a site visit is unlikely to be useful to jurors, and Defendant can easily transport the applicable store incident report, video recording of the incident, or other documentary evidence that is located in Maine to Vermont at or before the time of trial.[1]  *See Lapa*, 2019 WL 2004072, at *4 ("[T]he location of documents is given little weight and is mostly neutral in today's world of widespread electronic document production.").

### D.     Convenience and Relative Means of Parties

Next, the Court considers the convenience and relative means of the parties.  In general, where, as here, a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the court may consider the relative means of the parties in determining whether to transfer.  *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991).  A party arguing for or against transfer on the grounds of relative means "must offer documentation to show that transfer . . . would be unduly burdensome to [its] finances."  *Seltzer*, 2010 WL 3910597, at *5 (omission in original) (internal quotation marks omitted).

This factor favors Plaintiff, as a private individual in her 70s who is "primarily retired"; living in a trailer in Colchester, Vermont; and "still recovering

---

[1] In its Motion, Defendant cites *King v. Corelogic Credco, LLC*, Civil Action No. 3:17cv761, 2018 WL 2977393 (E.D. Va. June 13, 2018) (*see* Doc. 7-1 at 2), but the case is easily distinguishable, as *King* was a nationwide consumer reporting class action where there was little evidence of defendant's conduct in the state of filing, Virginia.  Specifically, the defendant in *King* had "no data servers, offices, or employees" in Virginia, *King*, 2018 WL 2977393, at *6; rather, its principal place of business and "the nucleus of operative facts," including most of the relevant credit reports, was located in San Diego, California, *id.* at *8, where the case was ultimately transferred.  Here, in contrast, Defendant owned and operated a retail store in Burlington, Vermont at the time of the incident; and Defendant targeted Vermont residents including Plaintiff in its business marketing during the relevant period.  (*See* Doc. 1 at 1–2, ¶¶ 7–8.)

9

from major surgery" due to injuries resulting from the incident underlying this action. (Doc. 18 at 4). Plaintiff cannot match the resources of Defendant, a foreign corporation with stores located throughout the United States and the world.[2] (Doc. 1 at 1, ¶ 2). *See Schmidt*, 260 F. Supp. at 814 (finding that corporate defendant would not suffer any "oppressive or unusual expense or inconvenience" in transporting its own employees to New York, where it does business; but plaintiff and her husband, as "persons of modest means," "certainly cannot match resources with defendant"). It would clearly be more burdensome for Plaintiff to travel to Maine than it would be for Defendant's employees to travel to Vermont, where one of Defendant's stores is located.

### E.   Locus of Operative Facts

The locus of operative facts giving rise to this suit is at Defendant's store in Maine, and thus this factor favors Defendant. Notably, however, the operative facts regarding Plaintiff's injuries subsequent to the day of the incident occurred and continue to occur in Vermont. Moreover, the alleged facts giving rise to this suit—the movement of a recliner chair onto another piece of furniture that fell on Plaintiff—are fairly straightforward, unlikely to require many witnesses or documentary evidence; whereas Plaintiff's alleged injuries, including meniscus tears to her knee and structural damage to her hip requiring surgery, appear to be more complicated. Further, as discussed above, a jury visit to the store is unlikely to be required or helpful, as presumably the store display and placement of furniture has

---

[2] *See* L.L.BEAN, COMPANY INFORMATION, https://www.llbean.com/llb/shop/516920?page=company-info (last visited 5/28/20).

10

been modified since the incident giving rise to this suit. Therefore, this factor weighs only slightly in favor of Defendant.

### F. Availability of Process to Compel the Attendance of Unwilling Witnesses

"The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 266 (S.D.N.Y. 1989). Here, this factor favors Plaintiff, for the same reason the convenience of witnesses factor favors Plaintiff: although there are witnesses in both states, most of Defendant's witnesses are party witnesses, who will be available to testify wherever the trial occurs based on their employment relationship with Defendant. *See Race Safe Sys., Inc. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1111 (N.D.N.Y. 2003) ("The ability to compel the attendance of witnesses is generally relevant only with respect to third party witnesses, since employees of the parties will, as a practical matter, be available in any venue by virtue of the employment relationship."). Moreover, Defendant has made no representation that its employees, or even its former employees, are unwilling or unable to testify in Vermont should the case remain here.

### G. Public-Interest Factors

Finally, the Court considers the public-interest factors, including Maine's interest in locally resolving cases arising at its retail stores, and the State's interest in having diversity cases tried at home. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013). The Court finds that these factors do not favor transfer, given that Defendant has not shown that Maine has a

particular interest in resolving this dispute, and "federal judges routinely apply the law of a State other than the State in which they sit." *Id.* at 67.  This Court is fully capable of applying Maine law in this relatively straightforward premises-liability negligence action.  *See id.* at 67–68 ("We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia.").

## Conclusion

For these reasons, the Court finds that Defendant has failed to meet its burden of demonstrating that transferring this case to the District of Maine is appropriate on the grounds of convenience, and that it is in the interest of justice for the case to remain in this Court.  Therefore, Defendant's Motion to Transfer (Doc. 7) is DENIED.

Dated at Burlington, in the District of Vermont, this 29th day of July 2020.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge